EVANS et al vs CLARK.

Opinion delivered June 7, 1897.

*1. Instructions—Exceptions.*

Where a party takes proper exceptions to any matter in the record, it is not necessary to take other exceptions, if the first exception taken covers the matter in issue, and therefore, if a proper instruction is refused, and exception taken to the refusal, the giving of an inconsistent instruction, if erroneous need not be excepted to.

*2. Constitution of Arkansas of 1868—Abrogated by the Constitution o 1874.*

By the adoption of the Constitution of the State of Arkansas o 1874, the Constitution of that State of 1868 was abrogated in it entirety, and the Act of the General Assembly of Arkansas, o April 9, 1891, took effect from its passage, and any defense tha could be made against the original holder of a promissory not executed May 1, 1891, in payment for a patent right, could b made against any holder of such note.

Appeal from the United States Court for the Norther District.

YANCEY LEWIS, Judge.

Action by Mary T. Clark against R. A. Evans & C Judgment for plaintiff. Defendant appeals. Reversed.

This suit was instituted by Mary T. Clark in th United States Court in the Indian Territory, in the Nortl ern district thereof, on the 8th day of August, 1892, to r cover the sum of $416.67 and interest from May 1, 189 until paid, as evidenced by a promissory note executed l R. A. Evans & Co. The note sued on was given in pa ment of an interest in a certain patent right for the growir

and splashing of hedge fences, with the right to use and sell said right in the Indian Territory, Oklahoma, and in several counties in the state of Arkansas. Upon the purchase and payment of said interest, a corporation was to be formed, and stock issued to the purchasers equal in amount to their interest in said patent right and patent-right territory. A large number of notes were made, with the agreement that they were to remain in the hands of the original payees, and were not to be sold to any person whomsoever. Contrary to said agreement, R. L. DuVall, who claimed to own said patent right, and his co-workers to whom said notes had been executed, sold the same to various parties, among whom was the plaintiff herein, Mary T. Clark. Nothing was done towards perfecting said arrangements, and the payors of said notes some time thereafter learned that most of them had been negotiated, and demanded of the payees that they should be given up and canceled. In the spring of 1891, R. L. DuVall, the promoter of said scheme, came to Muscogee, and offered to enter into a new arrangement. He represented that he would surrender the old notes, and let each party take one-half of the amount of interest in the patent right and patent-right territory as aforesaid, as they had originally agreed to do, and execute new notes for the same. No steps had been taken up to that time to form any corporation, but shortly afterwards one was formed in the state of Arkansas, and stock issued to the parties in amount equal to the sum of the last notes they had given in purchasing a certain interest in said patent right and patent-right territory. The note (as before stated) in controversy was executed on May 1, 1891, and was payable at the Merchants' Bank, Ft. Smith, Ark., making, it is conceded, said contract an Arkansas contract, to be governed by the commercial laws of Arkansas in force at the date of its execution. The defendants introduced an act of the Arkansas legislature approved April 9, 1891, which provides that notes executed in

payment of any patent right or patent-right territory shal
be subject to all defenses that could have been made agains
the original payee, whether transferred before maturity o:
not. The court refused to apply said act to the case, hold
ing, in effect, that it was governed by section 22, art. 5, o
the constitution of the state of Arkansas of 1868, and tha
said provision was continued in force by section 1 of th
schedule to the constitution of 1874, the constitution now i
force in said state, the contention of the appellant being tha
said act took effect from its passage, and the constitution o
1874 of the state of Arkansas entirely did away with tha
part of the constitution of 1868, and that said section of sam
was not in force in April, 1891, the time said law was enac
ed, and for this reason has prosecuted this appeal to have th
judgment of the court reversed and set aside.

*William T. Hutchings* and *Albert Z. English*, for appel
ant.

1. As before stated the note sued on in this case w
payable in the state of Arkansas, and as a contract
governed by the laws of the place where it is to be perforn
ed, this contract was an Arkansas contract and governed l
the laws of the state in force at that time. Watson vs Lan
20 Atl. Rep. 894; Stevens vs Gregg, 12 S. W. 775; Calhou
Co. vs Galbraith, 99 U. S. 214, L. Ed. 410.

2. This note was executed in May, 1891, and the co
sideration for it was the assignment of an interest ir
certain patent-right and patent-right territory, a portion
said territory being embraced in the State of Arkansas.
April, 1891, the state of Arkansas passed the law befo
referred to with reference to such notes. Sandels & Hil
Dig., Sec. 492.

3. It is a well settled law that legislative enactmer
take effect from their passage, unless a different time

ecified. Matthews vs Zanes, 7 Wheat. 164; Sedgwick on tat. Construction, pp 65 to 67; Sutherland on Stat. Conruction, Sec. 104.

4. Clauses that have been eliminated from a Conitution by amendment may be referred to in aid of the terpretation of the others originally associated with them d remianing in force. Fletcher vs Peck, 6 Cranch 139. ut that is the only purpose they can serve. The express-n "existing laws" used in the schedule of the Constitution 1874 is one quite generally used in all State Constitutions d has a well established and accepted construction, which that it refers always and only to that general body of laws ferred to by Mr. Cooley, as distinguished from the Contution and fundamental law of the state. Cooley's Contutional Limitation, 32. As a matter of good law, however, intention to abrogate previously existing laws in general, be presumed in the absence of expressions to that effect. dlich on Interpretation of Statutes, Sec. 520.

*Rufus V. Bowden* and *J. H. Koogler*, for appellee.

1. Section 22, Article V, of the Constitution of the te of Arkansas, 1868, is in force, by virtue of the first use of section 1, Schedule to Constitution of Arkansas, 4. Dyer vs Gill, 32 Arkansas, 410; Shinn vs Tucker, 33 kansas 421; Lindsay vs Norrill, 36 Ark. 545; Cass vs lon, 2 Ohio St. 607; Cooley Const. Lim., 5th ed., pg. 70, 71.

2. The Federal Courts adopt local construction as to tters pertaining to state constitutions. Sedg. Stat. & st. Law; Webster vs Cooper, 14 Howard, 488.

3. Plaintiff was an innocent holder for value of the ginal note. The note in controversy was given in renew-f said original note, hence it would be held in like manner her. I Dan. Neg. Instr., (4th ed. ) sec. 177, 179, 205.

SPRINGER, C. J. (after stating the facts.)   There
but one question presented by the record in this case whic
we are called upon to consider.   In order to understand th
question in issue, the following provisions of the constitu
tion and laws of the state of Arkansas are cited:   Firs
Section 22, art. 5, of the constitution of 1868 of the state
Arkansas, which is as follows:   "No act shall embrace mo
than one subject, which shall be embraced in its title.   N
public act shall take effect or be in force until ninety (9(
days from the expiration of the session at which the same
passed, unless it is otherwise provided in the act."   Secon
The first clause of section 1 of the schedule to the constit
tion of the state of Arkansas of 1874, which is as follow
"All laws now in force which are not in conflict or inco
sistent with this constitution shall continue in force un
amended or repealed by the general assembly."   Thir
An act to amend an act of the Arkansas legislature approv
April 9, 1891, which is as follows:   "That section fo
hundred and seventy-six (476) of Mansfield's Digest of t
statutes of this state be amended so as to read as follow
'Nothing in the preceding section shall apply to a bill of 
change or negotiable promissory note, transferred in go
faith and for value before maturity, but such instrume
shall be governed by the rules of the law merchant conce
ing commercial and negotiable paper.   Provided, that 
payer and drawer in all notes, drafts and bills of exchar
executed or drawn in payment of any patent right or pat
right territory shall be permitted to make all defen
against any assignee, endorser, holder or purchaser of su
note, draft or bill of exchange, that could have been ma
against the original payee or drawee, whether such no
draft or bill of exchange be assigned or transferred bef
maturity or not.'"   These several acts were in eviden
The provisions of the constitution of 1868 and 1874 w

dmitted in evidence over the objection of the defendants below (the appellants in this court.) The appellants asked the court to instruct the jury as follows: "The court further instructs you that if you believe from the evidence that the note sued on was executed or drawn in payment of any patent right or patent right territory, and if you believe further that there was fraud in the inception of the instrument, or that the consideration for which the same was executed has failed, you must find your verdict for the defendants,"— which instruction was refused. The court thereupon instructed the jury, among other things, to the effect that if there was fraud constituting a defense in the procurement of the note, and the plaintiff was an innocent purchaser of said note before maturity, for value, the jury should find for the plaintiff, regardless of the question whether or not there was fraud in the procurement of the note. Counsel for appellee in their brief call attention to the fact that no exception was taken to this and to other instructions given, by the appellants, and contends that the propriety of the instruction cannot be questioned here. It is true that no exception was taken to the instruction given by the court. The appellants requested the giving of an instruction, quoted above, which was refused, which instruction, if given, would have been inconsistent with the one given by the court. Where a party takes proper exceptions to any matter in the record, it is not necessary to take other exceptions, if the exception first taken covers the matter in issue. The evidence in the case tends to show that the consideration for the note sued upon was an interest in a certain patent right and patent right territory. The act of the legislature of the state of Arkansas above quoted was approved April 9, 1891. The note in issue was payable at the Merchants' Bank of Fort Smith, Ark., and was dated May 1, 1891, which was 21 days after the passage of the act of April 9, 1891. If section 22 of article 5 of the constitution of 1868 was continued

*Instructions. Exceptions.*

in force by section 1 of the schedule of the constitution o
1874, and made a part of the latter constitution, the ac
would not have taken effect until 90 days from the expira
tion of the session of the legislature at which the same wa
passed, and in that event the said act would not have bee
in effect at the time the note was executed, and the not
would not have been affected by the provisions in referenc
to patent rights and patent right territory contained in sai
act.    But, on the contrary, if section 22 of article 5 was n
made a part of the constitution of 1874, said act took effec
on the date of its passage; and the provisions thereof whic
permitted the appellants, the makers of the note in questio
to make the same defense against the indorsee or holder of
the note which they could have made against the origin
payee, would have been in force when the note was execute
The instruction asked by the appellants which was refus
by the court covered this point, and correctly stated the la
if appellants' contention is correct.    The constitution of t
state of Arkansas of 1874 was a complete instrument in itsel
and was intended to embody all constitutional provisio
which were to be continued in force thereafter.    If t
framers of that instrument had intended that a part of t
constitution of 1868 was to be continued in force, such par
would have been incorporated in the body of the instrumer
It would be seen, upon inspection of the two constitution
that there are many provisions in the latter constituti
which were copied verbatim from the previous constitutio
The including of certain provisions of the constituti
of 1868 in the provisions of that of 1874, in the very wor
in which they appear in the former instrument, must
construed as the exclusion of all provisions not incorporat
in the new constitution, or incorporated with modificatior
The language of the first clause of section 1 of the schedu
to the constitution of 1874, which appellee contends carri
section 22 of article 5 of the constitution of 1868 into, a

ade it a part of, the constitution of 1874, is as follows:
All laws now in force which are not in conflict, or incon-
istent with this constitution, shall continue in force until
mended or repealed by the general assembly." The words
all laws now in force," can only have reference in this con-
ection to the statutes theretofore passed by the legislature.
imilar provisions to this are generally incorporated in new
onstitutions for the purpose of continuing the statutes
heretofore passed, not in conflict with the new constitution,
ntil they are amended or repealed. This construction is
ustained by reference to the latter clause of the provision,
hich is as follows: "Until amended or repealed by the gen-
ral assembly." Constitutional provisions cannot be amend-
d or repealed by the general assembly. Every state con-
itution points out the manner in which it can be repealed
amended. That manner is by the submission of the
mendment to the votes of the people, or by calling new
nventions. It would be an exceedingly unreasonable con-
ruction of the provision in question to assume that the
amers of the constitution of 1874 intended to incorporate
it a provision which the general assembly of the state
uld amend or repeal. The words in the provision in ques-
n, "All laws now in force * * * shall continue in force
til amended or repealed by the general assembly," admit
and can receive, but one construction: The laws referred
are statutes passed by the legislature, and not constitu-
nal provisions which cannot be amended or repealed by
legislature. It seems that the supreme court of the
te of Arkansas has not construed this provision in any
e called to our attention, but in the case of Tilson vs
tling, 60 Ark. 114, 29 S. W. 35, the note about which the
troversy arose in that case was executed July 1, 1891,
ich was not 90 days after the adjournment of the legis-
re which passed the act of April 9, 1891. But if section
f the constitution of 1868 had been continued in force by

the schedule of the constitution of 1874, said act would no[t]
have been in force at the time that note was executed.   It i[s]
true, as stated by counsel for appellants, that no point o[f]
this kind was raised before the court; but we cannot imagin[e]
that the supreme court of the state of Arkansas, or th[e]
counsel in the case, would have overlooked such a point a[s]
this, or omitted to have raised it.   In that case the cour[t]
gave effect to an act which would not have been in force i[f]
the contention of the appellee in this case is correct.   W[e]
are of the opinion, therefore, that section 22 of article·5 o[f]
the constitution of 1868 of the state of Arkansas is not [a]
part of the constitution of that state of 1874, and that th[e]

**Constitution of 1868 abrogated.** act of the general assembly of Arkansas of April 9, 189[1]
took effect from and after its passage; that it was in effe[ct]
when the note in controversy was executed; that under th[e]
provisions of that act the appellants, the makers of sai[d]
note, should have been permitted to make all defense[s]
against the appellee, the indorsee or holder of said not[e]

**Promissory note—Defense against innocent purchaser.** that could have been made against the original paye[e]
whether such note was assigned or transferred before m[a]
turity or not.   The court below therefore erred in refusin[g]
the instruction asked for by the counsel for the appellant[s]
The judgment of the court below is therefore reversed, an[d]
the case remanded for further proceedings in accordan[ce]
with this opinion.   Reversed and remanded.

KILGORE and CLAYTON, JJ., concur.